IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| JORGE CARLOS VERGARA MADRIGAL, <br><br>  Plaintiff/Petitioner, <br><br> v. <br><br> ANGELICA FUENTES TELLEZ <br><br>  Defendant/Respondent. | § § § § § § § § § § § § § | Civil Action No.: 3:15-CV-181 |

### VERIFIED PETITION FOR RETURN OF CHILDREN UNDER THE HAGUE CONVENTION

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Now comes Plaintiff and Petitioner, Jorge Carlos Vergara Madrigal, and respectfully shows this Court as follows:

### I. INTRODUCTION

1. This action is brought by Jorge Carlos Vergara Madrigal ("Vergara" or "Petitioner"), a citizen of Mexico, to secure the return of his 4-year-old daughter and 2-year-old daughter (together, "Children" or "Daughters"),[1] who were, without Petitioner's consent or acquiescence and in contravention of his exercise of custodial rights, wrongfully removed from Mexico and brought to the Western District of Texas by Defendant/Respondent Angelica Fuentes Tellez ("Fuentes" or "Respondent").

---

[1] To protect the privacy of Petitioner's minor children, the names, and other identifying information, of the Children are not included in body of this Petition. Concurrently with filing this Petition, Petitioner filed a Motion for Authority to File Under Seal Certain Exhibits to this Petition ("Motion to Seal"). One of the sealed exhibits is Petitioner's affidavit, referenced below, which contains the necessary identifying information. Other exhibits were filed under seal as referenced below.

2. This Petition is filed pursuant to the Convention on the Civil Aspects of International Child Abduction (the "Hague Convention" or the "Convention")[2] and the International Child Abduction Remedies Act ("ICARA").[3] A copy of the Hague Convention is attached as Exhibit A. The Hague Convention came into effect in the United States on July 1, 1988, and has been ratified between, among other Contracting States, the Unites States of America and Mexico.

3. The objects of the Hague Convention are:

> Article 1(a): To secure the prompt return of children wrongfully removed to or retained in any Contacting State; and
>
> Article 1(b): To ensure that rights of custody and of access under the law of one Contracting State are effectively respected in other Contracting States.

*Id.*

4. The Hague Convention authorizes a federal district court to determine the merits of a claim for the wrongful removal or retention of a child; it does not, however, permit the district court to consider the merits of any underlying custody dispute. This is not a suit for determination of custodial rights, but rather a suit to return the Children to the proper jurisdiction to make that determination.

## II. JURISDICTION AND VENUE

5. This Court has jurisdiction over this case pursuant to 42 U.S.C. § 11603(a) (jurisdiction under the Hague Convention) and 28 U.S.C. §1331 (federal question jurisdiction). Venue is proper pursuant to 42 U.S.C. § 11603 and 28 U.S.C. §1391(b) because, upon information and belief, the Children and Respondent are residing at the home located within the

---

[2] Oct. 25, 1980, T.I.A.S. no. 11,670 at 1,22514 U.N.T.S. at 98, *reprinted in* 51 Fed. Reg. 10494 (1986). The term "petition" is used throughout these pleadings, rather than "complaint," because that is the term required under the Hague Convention.
[3] 24 U.S.C.§§ 11601-11610 (2011).

jurisdiction of the El Paso Division of the Western District of Texas. See Exhibit B[4], Affidavit of Petitioner.

### III. STATEMENT OF FACTS

6. Petitioner is the biological and custodial father of the Children. Respondent is not the biological mother of the Children. Petitioner and Respondent were married on February 8, 2008, in Baja California Sur, Mexico. A copy of their marriage certificate is attached as Exhibit C.

7. In 2010, the first daughter was born in El Paso, Texas. A copy of the oldest daughter's birth certificate and a translation thereof are attached as Exhibit D.[5] In 2013, Petitioner's second daughter was also born in El Paso, Texas. A copy of the youngest daughter's birth certificate and a translation thereof are attached as Exhibit E.[6] Both Daughters were taken to Mexico approximately three weeks after their births. See Exhibit B, Affidavit of Petitioner. Petitioner and Respondent lived, with the children, in Guadalajara, Mexico, for about two-and-a-half years before moving to Mexico City in January, 2014.

8. Upon moving to Mexico City, Vergara and Fuentes, with the Children, lived together at their familial residence. The children were enrolled in and attended a private school (pre-k and kindergarten) in Mexico City. A copy of 2014-2015 invoices for tuition for the school and a translation thereof are attached as Exhibit F.[7] A copy of the Children's school attendance records and a translation thereof are attached as Exhibit G.[8] Vergara and Fuentes shared duties taking the Children to and from school and any other medical or other appointments they had. See Exhibit B, Affidavit of Petitioner. They also shared the responsibilities of caring for the Children, including providing for their medical care, education,

---

[4] Exhibit B has been filed subject to Petitioner's Motion to Seal.
[5] Exhibit D has been filed subject to Petitioner's Motion to Seal.
[6] Exhibit E has been filed subject to Petitioner's Motion to Seal.
[7] Exhibit F has been filed subject to Petitioner's Motion to Seal.
[8] Exhibit G has been filed subject to Petitioner's Motion to Seal.

food and clothing. *Id.* For the past year, the oldest daughter has taken private horseback riding lessons on the weekends and weekly French lessons. *Id.* For the past year-and-a half, both Daughters have been in gymnastics class once a week. *Id.* All of these activities are in Mexico City, and the gymnastics and French lessons are taught by private tutors at the house. *Id.*

9. Vergara and Fuentes travel frequently for business and pleasure, both together and separately. *Id.* The Children travel with them whenever possible and have been all over the world. *Id.* Both Daughters have travel documents and it is not unusual for the Children to accompany their parents on their various trips around the world. *Id.* However, the trips were always short and the family would return to their home in Mexico. *Id.* Fuentes has several nannies for the girls, so that a few would always be on duty. *Id.* The last known information on the nannies and other domestic staff is attached to the Motion to Seal as Exhibit H[9].

10. On March 18, 2015, Petitioner said goodbye to the Children before leaving on a two-week business trip to South America, including Brazil and Chile. *Id.* That was the last time he saw them. Petitioner saw Fuentes on March 22 when he met with her in Lima, Peru. *Id.* During that visit, Fuentes told Vergara that she was going to take the Children to Disneyland in California during the weekend of March 27. *Id.* Vergara arrived home in Mexico City on March 28, but Fuentes and the Children were at Disneyland in California for the weekend. *Id.* Vergara had to leave on another business trip, and left again on March 29 out of the country. *Id.* Fuentes and the Children returned to Mexico City on March 30. They then went to Puerto Vallarta for a short vacation. *Id.* The plan was for them to return to Mexico City on either April 5th or 6th, then the whole family (Vergara, Fuentes and the Children) were going to go to Miami, Florida, for the Easter holiday on April 7, 2015. *Id.*

11. Petitioner is the founder, CEO, and principal shareholder of a company in Mexico called Grupo Omnilife. *Id.* For the last several years, Fuentes had been the CEO of Omnilife

---
[9] Exhibit H has been filed subject to Petitioner's Motion to Seal.

4

until an investigation discovered that she had mismanaged company resources and committed financial improprieties, including, among other things, falsifying documents to convey company stock shares to herself. *Id.* There are also ongoing allegations that Fuentes took a large sum of money from the company and Vergara. *Id.* Based on the investigation, Omnilife and Vergara have begun legal proceedings against Fuentes in Mexico, and on April 1, 2015, a Mexican court ordered that Fuentes be removed as CEO. *Id.* Fuentes was unaware of the legal proceedings until the order was entered. *Id.* Fuentes' lawyers were notified of the order that same day. *Id.* Later that day, Fuentes sent a message to Vergara clearly upset and angry about the order. *Id.* That was the last time Vergara had any communication directly with Fuentes, and though Vergara has repeatedly attempted to contact Fuentes, both directly and through her Mexican lawyers, she refuses to communicate with him. *Id.* Vergara has been unable to enter the Mexico City home, because Fuentes, who owns the home in her name, changed the locks and security. *Id.*

12. Instead of coming home to Mexico City on April 5 as agreed, Fuentes flew with the Children to Ciudad Juarez on her father's private plane from Puerto Vallarta. *Id.* Vergara only learned of Fuentes' flight from the country when a company distributor called him to mention that he had been at the airport in Puerto Vallarta, and saw Fuentes and the Children boarding a private plane at the airport. *Id.* Then, one of Vergara's pilots confirmed that Fuentes and the Children had flown to Juarez, and apparently at least some of the Children's nannies and staff, in Fuentes' father's airplane. *Id.* Someone delivered Fuentes' and the Children's passports to Fuentes in Juarez, then she took the Children across the border into El Paso, Texas. *Id.*

13. Fuentes abducted the Children from Mexico without Vergara's permission or knowledge. Vergara has custodial rights to the Children and was exercising his rights until the wrongful removal.

14. On April 9, Vergara met with Fuentes' Mexican lawyer at the house in Guadalajara. *Id.* The lawyer told Vergara that Fuentes and the Children were in El Paso and further admitted that he told Fuentes to leave Mexico and go to El Paso to avoid being arrested in Mexico. *Id.* Fuentes is currently facing civil and possibly criminal charges in Mexico as well as the divorce and custody proceedings that Vergara initiated in May after she abducted the Children. The legal proceedings against Fuentes, and circumstances surrounding the same, have been the subject of much media attention in Mexico since they began. See Exhibit I, Vanity Fair Articles, for examples. Petitioner has now received an order from a Mexican judge awarding to Petitioner custody of his two daughters (See Exhibit J[10]). This order is in Spanish and is currently being translated to English and will be supplemented.

15. Vergara has attempted to contact the Children in El Paso via the cellphones of the nannies and staff who are present at the home. *Id.* Additionally, Vergara has asked Fuentes' lawyers to have Fuentes contact him, to no avail. *Id.* Before instituting these proceedings, Vergara's lawyers have asked Fuentes' lawyers for return of the children at least three times, and have only been met by refusal (See Exhibit O). Petitioner is aware that Respondent has been traveling outside El Paso since early April, and often posts photos and information about the girls on Instagram.

16. After learning of the Children's location in El Paso, Vergara promptly called his Mexican counsel for assistance in getting his Children back and met with her as soon as she was available. *Id.* When attempts to convince Fuentes (through her attorneys) to return the Children to Mexico were unsuccessful, on about April 23, 2015, with the help of his attorney, Vergara submitted a Request for Assistance to the Mexican Ministry of Foreign Affairs regarding the

---

[10] Exhibit J has been filed subject to Petitioner's Motion to Seal

6

abduction. A copy of the Request for Return is attached as Exhibit K.[11] The Request for Assistance was subsequently forwarded to the United States Department of State for assistance.

17. Prior to the abduction in April, Fuentes had never threatened to leave with the Children. See Exhibit B, Affidavit of Petitioner. During the marriage, there was never any abuse or violence by either party. *Id.* However, recently, Vergara has received apparent death threats from Fuentes or someone acting on her behalf. *Id.*

18. There is a significant risk that Fuentes will attempt to flee with the Children when she is made aware of these legal proceedings unless the Children are removed from her possession immediately. Fuentes has significant financial resources, has over $300 million at her disposal, is a frequent traveler, has other homes to flee to, and has fled Mexico to avoid arrest.[12] She is a fugitive with means, and an extended family with resources to assist her. Fuentes has family in El Paso who could assist her if she chose to hide the children—namely her brother, Valentin Fuentes, Jr., and her sister, Emma Fuentes. *Id.* Additionally, her father and mother, Valentin and Elma Fuentes, live directly across the border in Juarez, Mexico.[13] If she wanted to disappear with the children, she has the means to do so, unless she is prevented from fleeing.

19. Upon information and belief, Fuentes and the Children are currently residing at a home El Paso, Texas. A copy of an email from the State Department confirming the address is attached as Exhibit L.[14] The Children have been enrolled in a private school in El Paso, Texas. A copy of an email from the State Department disclosing the school location is attached as Exhibit M.[15] Petitioner is willing and able to come to El Paso to receive custody of the Children,

---

[11] Exhibit K has been filed subject to Petitioner's Motion to Seal.
[12] Vergara has more than $300,000,000 at her disposal. In addition to the home in El Paso, she also has homes in New York City and Aspen, Colorado. *Id.*
[13] Valentin Fuentes owns a private plane. *Id.*
[14] Exhibit L has been filed subject to Petitioner's Motion to Seal.
[15] Exhibit M has been filed subject to Petitioner's Motion to Seal.

and keep them in El Paso until appropriate further orders from this Court. Petitioner is already making those arrangements.

## IV. WRONGFUL REMOVAL AND RETENTION OF CHILDREN BY RESPONDENT: CLAIM FOR RELIEF UNDER THE HAGUE CONVENTION

20. As set forth above, on or about April 1, 2015, Respondent wrongfully removed the Children from Mexico within the meaning of Article 3 of the Convention, and continues to wrongfully retain the Children in the state of Texas, United States, in violation of Article 3 and despite Petitioner's efforts to have the Children returned to Mexico.

21. Petitioner has never acquiesced or consented to the removal of the Children from Mexico to the United States for other than brief vacations and never acquiesced or consented to the Children living outside of Mexico. Exhibit B, Petitioner's Affidavit.

22. Respondent's removal and retention of the Children is wrongful within the meaning of Article 3 of the Convention because:

(a) It is in violation of Petitioner's rights of custody as established by Mexican law and by court order. A copy of a letter from a Mexican family lawyer describing the relevant Mexican law regarding custodial rights is attached as Exhibit N[16]. A copy of the Federal District's Superior Court's order granting Petitioner sole custody of the Children is attached as Exhibit J. Specifically, Respondent's removal and retention of the Children is in violation of Petitioner's right to make decisions regarding the care and custody of the Children. *See* Hague Convention, Art. 5(q) (defining "rights of custody" under Article 3 to include "in particular, the right to determine the child's place of residence");

(b) At the time of the Children's removal from Mexico, Petitioner was exercising his parental rights and rights of custody within the meaning of Articles 3 and 5 of the

---

[16] Exhibit N has been filed subject to Petitioner's Motion to Seal.

8

Convention and, but for Respondent's removal and retention of the Children, Petitioner would have continued to exercise those rights; and

(c) The Children were habitually resident with Petitioner in Mexico within the meaning of Article 3 of the Convention immediately before their removal and retention by Respondent.

23. Respondent is presently wrongfully retaining the Children in the State of Texas, County of El Paso.

24. Upon information and belief, Respondent is keeping the Children in El Paso, Texas.

25. The Children are now four (4) and two (2) years old. The Hague Convention applies to children under sixteen (16) years of age and thus applies to both Children.

26. This Petition is filed less than one year after Respondent's wrongful removal of the Children. Petitioner has never consented or acquiesced to Respondent's wrongful removal or retention of the Children.

## V. PROVISIONAL REMEDIES
### (42 U.S.C. § 11604 & Hague Convention, Article 16)

27. Petitioner requests that this Court issue an immediate order restraining Respondent from removing the Children from the jurisdiction of this Court, and an order or warrant seeking immediate physical custody of the Children, directing any United States Marshal or other law enforcement officer to bring the Children before this Court. Additionally, Petition asks that this Court require Respondent to surrender her passport, visa, and other travel documents as well as the Children's documents until completion of a final hearing on this matter. Petitioner also asks that this Court schedule an expedited hearing on the merits of this Petition.

## VI. ATTORNEY FEES AND COSTS
### (42 U.S.C. § 11607)

28.     To date, Petitioner has incurred attorneys' fees and costs as a result of the wrongful retention of the Children by Respondent.

29.     Petitioner respectfully requests that this Court award him all costs and fees, including transportation costs, incurred to date as required by 42 U.S.C. § 11607.

## VII. NOTICE OF HEARING
### 42 U.S.C. § 11607-3(c)

30.     Pursuant to 42 U.S.C. § 11603(c), Respondent shall be given notice of these proceedings in accordance with the laws governing notice in interstate child custody proceedings.

## VIII. RELIEF REQUESTED

WHEREFORE, Petitioner, Jorge Carlos Vergara Madrigal, prays for the following relief:

(a)     An immediate temporary restraining order prohibiting the removal of the Children from the jurisdiction of this Court pending a hearing on the merits of this Verified Complaint, further providing that no person acting in concert or participating with Respondent shall take any action to remove the Children from the jurisdiction of this Court pending determination on the merits of the Verified Complaint, issuing a warrant or appropriate order for the immediate physical custody of the Children, and requiring Respondent to surrender both her personal and the Children's travel documents;

(b)     The scheduling of an expedited preliminary injunction hearing on the merits of the Verified Complaint; an order that Respondent show cause at this hearing why the Children should not be returned to Mexico, and why such other relief requested in the Verified Complaint should not be granted; and, pursuant to Federal Rule of Civil Procedure 65, an order that the trial of the action on the merits be advanced and consolidated with the hearing on the Verified Complaint;

(c) A final judgment in Petitioner's favor establishing that the Children shall be returned to Mexico, where an appropriate custody determination can be made by a Mexico Court under Mexican law;

(d) An Order requiring that Respondent pay Petitioner's expenses and costs, including transportation costs, under 42 U.S.C. § 11607, such expenses and costs to be resolved via post-judgment motion, consistent with the procedure outlined under Local Rule 54.2(A) of this Court; and

(e) For any such further relief as may be just and appropriate under the circumstances of this case.

                Respectfully submitted,

                **DYKEMA COX SMITH**

                221 N. Kansas St., Suite 2000
                El Paso, Texas  79901
                915-541-9300
                915-541-9399 Facsimile

                By: */s/Mark C. Walker*
                    Mark C. Walker
                    State Bar No. 20717320
                    mwalker@dykema.com

                    Bonnie Kirkland
                    112 E. Pecan St., Ste. 1800
                    San Antonio, Texas 78205-1521
                    State Bar No.2 4074539
                    bkirkland@dykema.com

                **ATTORNEYS FOR PETITIONER,**
                **JORGE CARLOS VERGARA MADRIGAL**

## VERIFICATION

| | |
|---|---|
| UNITED MEXICAN STATES | § |
| CITY OF GUADALAJARA | § |
| STATE OF JALISCO | § |
| U.S. CONSULATE GENERAL | § |

BEFORE ME, the undersigned Notary Officer, personally appeared Jorge Carlos Vergara Madrigal who, being by me duly sworn, on his oath, deposed and stated that he is over twenty-one (21) years of age and duly qualified and authorized in all respects to make this affidavit; that he is fluent in English and can read and write English, that he has read the foregoing Petition; that he either has personal knowledge of the facts upon which the foregoing answers are based, or he has access to records and information upon which said answers are made; and that assertion made in the foregoing Petition are true and correct.

_____
Jorge Carlos Vergara Madrigal (signature)

JORGE CARLOS VERGARA MADRIGAL
(printed name)

SUBSCRIBED AND SWORN TO BEFORE ME this 11th day of June 2015.

United Mexican States
State of Jalisco
City of Guadalajara     } SS:
Consulate General of the
United States of America

_____
Notary Officer (signature)

Lori D. Pennell
Consular Associate
US Consulate General Guadalajara
(printed name)

United States Consulate General
Guadalajara, Jalisco, México
Title of Notarizing Officer

6062100.3